IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                    Cr. No.  18-20202-SHL

BRIAN HOWARD,

    Defendant.

## POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS

COMES NOW the defendant Brian Howard, by and through his counsel, Needum L. Germany and submits his position with respect to the sentencing factors pursuant to *§6A1.2 of the United States Sentencing Guidelines Manual (effective 2018).*

The defendant and counsel have reviewed and discussed the Presentence Investigation Report together.

### OBJECTIONS TO THE PRESENTENCE REPORT

The defendant objects to Paragraph 13. Under the guidelines aggravated burglary does not count as a crime of violence under the guidelines. As such the base offense level in that paragraph should be Level 20.

Mr. Howard objects to Paragraph 14 of the PSR, whereby the probation officer recommended a four-level enhancement for possession of a firearm in connection with another felony offense. The defendant asserts that the narcotics, a mere two grams of powder cocaine, found on him on the day of arrest were for personal use. In United States v. Shields, 664 F.3d

1

1040 (6th Cir.2011), the Sixth Circuit reversed an application of the firearm enhancement where the defendant possessed only a small amount of marijuana and a baggy with cocaine residue. See id. at 1044.  The government in Shields had not produced "relevant evidence, other than mere proximity, that the gun was actually used or intended to be used to protect the drugs." Id. at 1046.  The Sixth Circuit refused to apply the fortress theory in the case of simple possession because of the plain text of the Guidelines.  The application note that enshrined the fortress theory in the Guidelines singles out drug trafficking crimes for special treatment.  "This implies that 'while close proximity between a firearm and drugs will suffice to justify the enhancement when an offender is engaged in drug trafficking, in other cases the enhancement applies only if the government can establish that the firearm actually or potentially facilitated that offense.' " Id. at 1045 (quoting United States v. McKenzie, 410 Fed.Appx. 943, 945 (6th Cir.2011)).   In this case, the government can make no such showing and have in fact agreed that the enhancement does not apply as part of the plea agreement.

The defendant objects to Paragraph 19, where the probation officer recommends that he be classified as armed career criminal.  His armed career criminal status was based on convictions for aggravated burglary offenses under Tennessee law listed in Paragraphs 25(2 counts for attempt), 26, 30, 31, and 32.  Unlike the simple question as to the application of the guidelines, this question is murkier as detailed below.

When the defendant entered his guilty plea, aggravated burglary in Tennessee did not qualify pursuant to the 6th Circuit's decision in United States v. Stitt, 860 F.3d 854, 860-61 (6th Cir. 2017), holding that a conviction for Tennessee aggravated burglary no longer qualified as a violent felony for ACCA purposes.  However, after Mr. Howard entered his guilty plea, The Supreme Court reversed this Court's holding in Stitt.  See United States v. Stitt, 139 S. Ct. 399

(2018). The Court held that because Tennessee's aggravated burglary statute narrowed its "habitation" definition concerning non-typical structures such as vehicles or tents to those designed or adapted for the overnight accommodation of persons, it was consistent with the generic definition of burglary. Id. at 406-07.

When Mr. Howard entered his guilty plea, Undersigned stated that Mr. Howard was advised that the aggravated burglary issue was in flux and would be decided by the Supreme Court in Stitt. Certainly, Undersigned believed that Stitt would control the outcome on the issue. However, Undersigned has recently become aware of other potential challenges of whether Tennessee's aggravated burglary in Tennessee qualifies under the ACCA. The defendant notes that the plea agreement specifically stated that the defendant's maximum sentence would be 10 years and did not mention that if the ACCA applied, that defendant would not be able to withdraw is plea.

## SUMMARY OF ARGUMENTS

**ISSUE I:** The Supreme Court overruled that part of this Court's Stitt opinion which held that the Tennessee aggravated burglary statute is broader than generic burglary because the definition of "habitation" incorporated vehicles and movable enclosures. The Supreme Court's determination rested upon Tennessee's limiting language within the definition of "habitation" that requires that non-structures be designed or adapted for overnight use. The Court did not overrule that part of Stitt holding that Tennessee's aggravated burglary statute is indivisible and in fact, implicitly adopted it by refraining from applying the modified categorical approach during its analysis.

In addition to incorporating the definition of "habitation" from another statutory section of the Tennessee Code, the Tennessee aggravated burglary statute embraces several means of

3

committing an aggravated burglary by incorporating Tennessee's basic burglary statute. Tennessee's burglary statute provides three applicable means of committing an aggravated burglary, two of which require intent upon entry, and one of which does not require such contemporaneous intent. This Circuit has determined that contemporaneous intent is not a requirement for generic burglary because Taylor's definition of generic burglary contains "remaining in" language. Under this reasoning, someone who enters a building and while inside commits or attempts to commit a felony will necessarily have "remained" inside the building to do so.

The law surrounding this issue, however, has become quite unsettled in this area since Mr. Howard's case commenced. The Supreme Court has granted certiorari to reconsider this Circuit's opinion in United States v. Quarles, 850 F.3d 836 (6th Cir. 2017), cert. granted, Quarles v. United States, No. 17-778, 2019 U.S. LEXIS 579 (Jan. 11, 2019). The issue is whether Taylor's "remaining in" language requires contemporaneous intent at the time of unlawful entry or first unlawful remaining in. Several other cases were up on the same issue and have been languishing with the Court for months since being sent to conference, all with no decision as to certiorari. At this point, it is likely the Court will simply hold them in abeyance pending the outcome in Quarles. Because this is an issue of law that has become unsettled in Mr. Howard's favor, Mr. Howard respectfully requests this Court to consider the issue herein and, if necessary, hear arguments as to whether the defendant be allowed to withdraw his guilty plea, as he has waived his right to appeal. Alternatively, Mr. Howard respectfully requests that the Court hold his sentencing in abeyance pending the Supreme Court's decision on this issue, as the defendant will be unable to challenge his status as an armed career criminal.

**ISSUE II:** Issue II turns on whether this Court determines that Subsection 3 of Tennessee's burglary statute is nongeneric, and that Tennessee's aggravated burglary statute is divisible along the "burglary," versus the "habitation" variant of the crime. Mr. Howard maintains a position that it would fly in the face of Mathis to find the "burglary" definition incorporated from a separate statute divisible in the context of Tennessee's aggravated burglary statute. Should the Court determine to do so, however, he avers that the government has not carried its burden of establishing that he committed one of the "violent" means of burglary, requiring intent upon entry.

## ARGUMENTS

**ISSUE I:** **TENNESSEE'S AGGRAVATED BURGLARY STATUTE IS NONGENERIC BECAUSE IT INCORPORATES A MEANS OF BURGLARY WHEREBY THE STATE CAN OBTAIN A CONVICTION WITHOUT SHOWING REQUISITE INTENT UPON ENTRY**

**Argument**

The enhanced penalties under the ACCA, including the 15-year mandatory minimum, apply when a person violates 18 U.S.C. § 922(g)(1) after having been convicted of at least three violent felonies. See 18 U.S.C. § 924(e)(1). Without the enhanced penalties of the ACCA, a § 922(g)(1) conviction carries a maximum penalty of 10 years. See 18 U.S.C. § 924(a)(2).

Under the ACCA, "burglary" is specifically enumerated as a "violent felony." See 18 U.S.C. § 924(e)(2)(B)(ii). The analysis, however, is not quite that simple. The Supreme Court has outlined an analytical approach that courts must follow to determine whether a particular statute, despite having "burglary" in its name, truly entails the same type of "burglary" that is enumerated in the ACCA's "violent felony" definition. This is known as the categorical approach, wherein courts must compare the elements of the statute of conviction to the elements

5

of the generic definition of the offense. See Taylor v. United States, 495 U.S. 575, 599-600 (1990). If the statute of conviction criminalizes more conduct than the generic definition, then that conviction is not the same offense enumerated in the ACCA's "violent felony" definition. See Descamps v. United States, 570 U.S. 254, 257 (2013). Consequently, that conviction is not a violent felony for ACCA purposes.

Under the categorical approach, courts may only compare the elements of the statute of conviction to the elements of the generic definition. In other words, courts are prohibited from looking to "the particular facts underlying those convictions," Taylor, 495 U.S. at 600, as a means of determining if "the defendant actually committed the offense in its generic form," Descamps, 570 U.S. at 261. The gravamen of the categorical approach is that it is an "elements-only" analysis. See Mathis v. United States, 136 S. Ct. at 2252, 2254 (2016).

In Taylor, the Supreme Court recognized that courts may occasionally struggle to ascertain which elements within a statute should be compared to the generic definition of the offense. See Taylor, 495 U.S. at 602. This occurs when a defendant's prior conviction is based on a statute that "sets out one or more elements of the offense in the alternative," Descamps, 570 U.S. at 257, "thereby defin[ing] multiple crimes," Mathis, 136 S. Ct. at 2249. Dubbed divisible statutes, the Taylor court suggested that courts may need to "go beyond the mere fact of conviction" and look to the facts underlying a conviction in order to determine which element or set of elements was the basis of a defendant's conviction. See Taylor, 495 U.S. at 602. Thus, when courts attempt to apply the categorical approach, but are thwarted by a divisible statute, they are permitted "to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." Descamps, 570 U.S. at 257. In this way, courts are able to identify which elements in a divisible statute should be

6

compared to the generic definition of the offense. This is referred to as the modified categorical approach. See Stitt, 860 F.3d at 862.

To determine a statute's divisibility, courts look first at the language of the statute and state-court decisions; if neither source provides a definitive answer, courts turn to the record of conviction. See Mathis, 136 S. Ct. at 2249, 2256; see also United States v. Ritchey, 840 F.3d 310, 317-18 (6th Cir. 2016). If the court still cannot discern whether a statute presents elements or means, the statute is indivisible. Mathis, 136 S. Ct. at 2257. When a statute is indivisible, resort to the modified categorical approach is inappropriate. Id. at 22543-54

This Court held en banc in Stitt that the Tennessee aggravated burglary statute is indivisible under Mathis and broader than generic burglary for purposes of the ACCA's enumerated-offenses clause. See Stitt, 860 F.3d at 862. The Supreme Court overruled that part of Stitt holding that the Tennessee aggravated burglary statute is broader than generic burglary for purposes of the ACCA's enumerated-offense clause. See Stitt, 139 S. Ct. at 404, 406-07. It did not overrule that part of Stitt holding that Tennessee's aggravated burglary statute is indivisible.

Tennessee's aggravated burglary statute provides that "[a]ggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." See Tenn. Code Ann. § 39-14-403(a). Subsection 401 contains the definition of "habitation" addressed in Stitt. Subsection 402, however, defines "burglary" as follows:

> A person commits burglary who, without the effective consent of the property owner:
>
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;

7

    (3)    Enters a building and commits or attempts to commit a felony, theft or assault; or

    (4)    Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402(a)(1)-(4). In the context of Tennessee's indivisible aggravated burglary statute, Tenn. Code Ann. § 39-14-402 supplies a list of means by which Tennessee aggravated burglary can be committed. Hence, resort to the modified categorical approach cannot be had to determine the means of burglary underlying an aggravated burglary conviction. See, e.g.., Van Cannon v. United States, 890 F.3d 656, 663 (7th Cir. 2018) ("[I]f an alternatively phrased statute describes different factual means of committing an element of a single crime, then the modified categorical approach has no role to play." (citing Mathis, 136 S. Ct. at 2253)). This was apparent in Mathis, wherein the Supreme Court cited United States v. Ozier, 796 F.3d 597 (6th Cir. 2015) – a case whose only issue was whether Tennessee's aggravated burglary statute was divisible -- as an example of a case relying upon the same error it was overruling, thereby dictating that Tennessee's aggravated burglary statute is indivisible. See Mathis, 136 S. Ct. at 2251 n.1 Thus, if any one of these means of committing aggravated burglary is broader than the generic definition of burglary, Mr. Howard's aggravated burglary convictions cannot count as ACCA predicate convictions.

    Obviously, per Taylor, the fourth type of burglary listed in § 39-14-402(a) is nongeneric and cannot be used as an ACCA predicate conviction. See United States v. Couch, 65 F.3d 542, 544-45 (6th Cir. 1995). It is now also apparent that this section would be inapplicable in any event because of the limitation in the definition of "habitation" incorporated in Tennessee's aggravated

8

burglary statute requiring that vehicles be designed or adapted for overnight accommodation before a defendant can be convicted of aggravated burglary.

Of the three remaining subsections, the first two involve entering a building "with the intent to commit a felony," while the third does not require intent to commit a felony at the time of entry. During the pendency of this case, whether the third subsection of Tennessee's burglary statute can qualify as a violent felony for ACCA purposes has come into question. The specific issue is whether the third subsection of Tennessee's burglary statute runs afoul of Taylor's generic definition of burglary as the "unlawful or unprivileged entry into, or remaining in, a building or structure, with the intent to commit a crime." Taylor, 495 U.S. at 599. Subsection (a)(3) lacks the requirement that a defendant enter a structure with intent to commit a crime. The question turns on the "remaining in" portion of the Taylor definition.

This Circuit has held that all of the first three subsections of Tenn. Code Ann. § 39-14-402 fit within the generic definition of burglary and are therefore ACCA predicate convictions. See United States v. Priddy, 808 F.3d 676, 684-85 (6th Cir. 2015). With specific regard to Subsection (a)(3), the Priddy Court held that the Subsection was generic burglary under Taylor's "remaining in" language because someone who enters a building or structure and, while inside, commits or attempts to commit a felony will necessarily have remained inside the building or structure to do so. Thus, the issue here – whether § 39-14-402(a)(3) fits within the generic definition of burglary because it allows a defendant to be convicted of burglary if he enters a building and then forms the requisite intent to commit a crime while inside – has been rejected in this Circuit because Priddy is controlling precedent. See United States v. Ferguson, 868 F.3d 514, 515-516 (6th Cir. 2017). The defendant in Ferguson, however, has filed a petition for certiorari review that remains pending, along with several other cases that raise the same issue under various state statutes. See Ferguson

v. United States, No. 17-7496 (Pet. Cert. filed Jan. 17, 2018); see also United States v. Herrold, No. 17-1445 (Pet. Cert. filed Apr. 18, 2018) (Texas burglary statute); Moore v. United States, No. 17-8153 (Pet. Cert. filed Mar. 14, 2018) (Tennessee burglary statute); Secord v. United States, No. 17-7224 (Pet. Cert. Filed Dec. 19, 2017) (Michigan home invasion statute. The Court recently granted certiorari review, however, on this Court's Quarles decision, which raises the same issue as regards a Michigan home invasion statute.

The Court is addressing the widening circuit split on the issue of whether an intent to commit a crime must be present at the moment one lawfully enters or remains in a building. The Fifth, Seventh and Eighth Circuits have concluded that Taylor requires a showing that the defendant had criminal intent when he or she unlawfully entered or first unlawfully remained inside the building. These circuits have found that the act of "remaining in" a building, for purposes of generic burglary, is not a continuous undertaking, but a discrete event that occurs at the moment when a perpetrator, who at one point was lawfully present, exceeds his license and overstays his welcome. See United States v. Herrold, 883 F.3d 517, 531-32 (5th Cir. 2018); Van Cannon, 890 F.3d at 665; United States v. McArthur, 850 F.3d 925, 939 (8th Cir. 2017). Put simply, these circuits require contemporaneous intent. See Herrold, 883 F.3d at 531; Van Cannon, 89 F.3d at 665; McArthur, 850 F.3d at 939 n.*. In addition to the Sixth, the Fourth, Ninth, and Tenth Circuits have reached the opposite conclusion, transforming any trespass into a burglary if the defendant decides at any point to commit a crime. See United States v. Bonilla, 687 F.3d 188, 194 (4th Cir. 2012) (affirming defendant's sentencing enhancement under USSG § 2L1.2 based upon violation of the Texas burglary statute at issue in Herrold); United States v. Reina-Rodriguez, 468 F.3d 1147, 1155 (9th Cir. 2006) (ruling that Utah second-degree burglary was a crime of violence under the Guidelines by finding that "remaining in" must refer to a continuing course of

conduct), overruled on other grounds, United States v. Grissel, 488 F.3d 844 (9th Cir. 2007); United States v. Dunn, 96 F. App'x 600, 605 (10th Cir. 2004) (holding that elements of Texas burglary statute substantially corresponded to Taylor's generic burglary elements).

The Fifth, Seventh and Eighth Circuits have it right. Perhaps the most instructive of these circuit decisions is the Fifth Circuit's holding in Herrold. This is because Texas' burglary statute is virtually identical to the first three subsections of Tenn. Code Ann. 39-14-402(a).[1] There is good reason for this. Legislative history reveals that the burglary statute in Tennessee's 1989 proposed Criminal Code, as well as the statute's commentary, were adopted nearly verbatim from the 1970 version of the proposed revision of the Texas Penal Code. See Jonathan Harwell, Burglary at Wal-Mart: Innovative Prosecutions of Banned Shoplifters Under Tenn. Code Ann. § 39-14-402, 11 Tenn. J. L. & Pol'y 81, 99-104 (2016) (citing Tennessee Sentencing Comm'n, Proposed Revised Criminal Code (1989); State of Tennessee Law Revision Comm'n, Criminal Code: Tentative Draft ii (1972)).

---

[1] Texas' burglary statute reads:

A person commits an offense if, without the effective consent of the owner, the person:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Texas Penal Code § 30.02(a)(1)-(3).

11

In Herrold, the Fifth Circuit held that because Texas' Subsection 3, Texas Penal Code § 30.02(a)(3), contained no textual requirement that a defendant's intent to commit a crime contemporaneously accompany a defendant's unauthorized entry, it was broader than the ACCA's generic definition of burglary. Herrold, 883 F.3d at 531. The court reasoned that because all entry is followed by some version of remaining in, and because the remaining in lasts until departure, almost every instance of entry would automatically involve remaining in. Id. at 532. The more natural way of reading the Supreme Court's reference to "remaining in" in its generic burglary definition, explained the court, captures burglars who initially have a license to enter a particular location but who remain there once that license expires in order to commit a crime. Id. Generic burglary would require these defendants to possess the intent to commit a crime while remaining in this narrower sense -- at the moment they exceed their license in order to commit a crime. Id.

The Herrold court supported its interpretation by referencing first the sources that the Taylor Court relied on in crafting its generic burglary definition. Id. The court noted that, after the Taylor Court articulated the elements of generic burglary, it immediately cited only the then-current edition of the influential LaFave and Scott criminal law treatise. Id. In that treatise, LaFave and Scott addressed the "remaining in" alternative, explaining that the language's purpose was to capture defendants who lawfully enter a location and then remain, once their license to be there is lost, in order to commit a crime. Id. Indeed, observed the court, the treatise's sole example of this type of burglary described "a bank customer who hides in the bank until it closes and then takes the bank's money." Id. at 532-33. The court also noted that LaFave and Scott directly alluded to Texas Penal Code § 30.02(a)(3) in this discussion, opining that Texas enacted § 30.02(a)(3) in order to avoid potential problems of proof "concerning whether the defendant's intent was formed before or after the unlawful entry or remaining." Id. at 533. Note that Tennessee shared the same

problem of proof concerns at the time of enactment of its statute. See 11 Tenn. J. L. & Pol'y at 104 & n.58 (explaining that the Tennessee Sentencing Commission similarly discussed the purpose of Tenn. Code Ann. § 39-14-402(a)(3) was to dispense with the need to prove intent at the time of entry).

The Herrold court noted the Taylor Court's mention of the Model Penal Code in its analysis, but also that the cited edition did not include any "remaining in" language at all. Herrold, 883 F.3d at 533. The Herrold court further observed that, to the extent the Model Penal Code drafters did discuss the existence of "remaining in" language in other burglary statutes, they were in accord with LaFave and Scott about whom that language was meant to reach: those initially licensed to be on a property but who exceeded their license in order to commit a crime. Id.

Finally, the Herrold court remarked on the Taylor Court's statement that its "generic sense" of the offense would have been recognized as burglary by most states at the time Taylor was decided. Id. In contrast, noted the Herrold court, not all states used "remaining in" language in their burglary statutes. Id. The Herrold court stated that LaFave and Scott listed only twenty-five in their treatise and the states that did include the language at the relevant time appeared to have been split in how they understood its scope. Id.

Next, the Herrold court posited that the "remaining in" version of burglary likely presented less danger to victims than generic burglary. Id. at 534. Here, the court observed that the Taylor Court's analysis was partially based on the premise that "[t]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation." Id. The Herrold court argued that scenarios in which a defendant trespasses but does not intend to commit a crime must engender less risk of confrontation than ones in which he enters just to commit a crime. Id.

13

The Herrold court did note this Circuit's opinion in Priddy. The court respectfully disagreed with Priddy's conclusion. It found the reasoning that because someone who enters a building or structure and, while inside, commits or attempts to commit a felony will necessarily have remained inside the building or structure to do so, begged the question of the meaning of the phrase "remaining in," rather than answered it. Id. at 536.

Note also the Seventh Circuit's astute observation that statutes worded like Tennessee burglary Subsection (a)(3) do not "require proof of intent to commit a crime at all – not at any point during the offense conduct." Van Cannon, 890 F.3d at 664 (emphasis in original). The Seventh Circuit likewise rejected any implicit intent rationale like that put forth in Priddy based upon the statute's requirement of proof of a completed crime because not all crimes are intentional. Id. Moreover, "Taylor's elements-based approach does not countenance imposing an enhanced sentence based on implicit features in the crime of conviction." Id. (emphasis in original).

Lastly, since the question presented here is close, the rule of lenity applies to construe any ambiguity against the government. The Supreme Court has "repeatedly emphasized that the touchstone of the rule of lenity is statutory ambiguity." Moskal v. United States, 498 U.S. 103, 107 (1990) (internal quotations and citation omitted). This means the rule is inherently contextual, which begs the question of how much ambiguousness constitutes ambiguity. Id. at 108. The answer is that lenity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute. Id. (internal quotations and citation omitted).

The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subject to them. See United States v. Santos, 553 U.S. 507, 514 (2008) (plurality opinion). The rule rightly "places the weight of inertia upon the party that can best induce

Congress to speak more clearly," it prevents the courts from having to "play the part of a mind reader," and it is a "venerable" requirement that the federal courts have applied for roughly two centuries. Id. at 515. Justice Frankfurter, writing for the Court in another case, said the following: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." Bell v. United States, 349 U.S. 81, 83 (1955).

Under the ACCA, it is more than clear that Congress left to the judiciary the task of imputing an undeclared meaning to the word "burglary," and the courts have struggled ever since. Congress originally defined burglary in the ACCA as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." Taylor, 495 U.S. at 581 (emphasis added) (citation omitted). In 1986, this definition was removed from the ACCA, and the legislative history is silent as to Congress' reason for the deletion. Id. The Taylor Court's definition is nearly identical to the original definition, and so it can be presumed that the Court's "remaining in" language meant the type of surreptitious remaining envisioned by Congress.

This surreptitious type of burglary is covered by Tenn. Code Ann. § 39-14-402(a)(2). Simply because trespass (and shoplifting for that matter), as covered by § 39-14-402(a)(3) are labeled "burglary" by the State, does not mean that they qualify as ACCA predicates. See Taylor, 495 U.S. at 588-89. Neither Congress, nor the Taylor Court could possibly have meant such convictions to be ensnared by the ACCA's net, which was originally cast to punish only the most violent offenders. Accordingly, any doubts regarding whether Tennessee's aggravated burglary statute meets the definition of violent felony under the ACCA should be decided in Mr. Howard's favor.

Finally, while the Supreme Court has held that a federal court of appeals normally will not correct a legal error made in criminal trial court proceedings unless the defendant first brought the error to the trial court's attention, there is an exception. Henderson v. United States, 568 U.S. 266, 269 (2013). The exception occurs when an unsettled legal question becomes settled in the defendant's favor during the appellate review process. Id. When that occurs, the error becomes plain within the meaning of Federal Rule of Criminal Procedure 52(b). Id.

This area of the law has become unsettled in Mr. Howard's favor. The petitions for certiorari in Quarles regarding Tennessee's burglary statute upon which this argument is based were not granted until well after this Mr. Howard pled guilty. Indeed, the government itself had argued that Herrold and Quarles provided the best vehicles for deciding the question, requesting that certiorari be granted in those cases, while holding cases like Ferguson and Moore in abeyance pending the decision. See Ferguson v. United States, No. 17-7496, Govt.'s Resp., at p. 10 (filed Apr. 18, 2018); Moore v. United States, No. 17-8153, Govt.'s Resp., at p. 10 (filed June 19, 2018).

In the end, the third means of committing an aggravated burglary, as described in Tennessee's burglary statute, "is just a trespass (a non-consensual entry) followed by commission of a crime within the trespassed habitation." Van Cannon, 890 F.3d at 664. Thus, for all of the reasons stated above, Mr. Howaed respectfully requests this Court to find that his aggravated burglary convictions still do not qualify as ACCA predicate convictions. At the very least, Mr. Howard requests that this Court hold his case in abeyance pending the Supreme Court's decision regarding whether to grant certiorari in the aforementioned cases.

**ISSUE II:** **EVEN IF TENNESSEE AGGRAVATED BURGLARY IS DIVISIBLE ALONG THE BURGLARY DIMENSION, THE GOVERNEMNT HAS NOT CARRIED ITS BURDEN OF ESTABLISHING THAT MR. HOWARD COMMITTED GENERIC BURGLARY**

**Argument**

This argument necessarily turns on whether this Court, or the Supreme Court, determines that Tennessee's Subsection 3 burglary is nongeneric. Like the argument above, Mr. Howard preserves it for further appellate review, however as stated earlier he has waived his right appeal and will be without recourse should this Court not hold this matter in abeyance.

Mr. Howard's position is that it would fly in the face of Mathis to apply the modified categorical approach to a separate definitional section of an indivisible statute. Should the Court determine to do so in this case, however, Mr. Howard avers that his aggravated burglary conviction has not been shown to be "violent" through use of the "charging document, written plea agreement, transcript of plea colloquy," jury instructions, and "any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005). If applying the modified-categorical approach to determine the burglary variant involved in Mr. Howard's prior convictions, the district court can "consult a limited class of documents" in order to determine which alternative element "formed the basis of the defendant's prior conviction." Descamps, 570 U.S. at 257. The permissible documents, per Shepard, are limited to the charging document, written plea agreement, transcript of plea colloquy, jury instructions, and any explicit factual finding by the trial judge to which the defendant assented. Shepard, 544 U.S. at 16. Here, it is unclear whether any Shepard documents, clarifying what type of burglary was involved in Mr. Howard's prior aggravated burglary convictions, exist.

17

The facts of the remaining the aforementioned aggravated burglary convictions listed in the PSR were taken from affidavits and arrest tickets.

Certainly, arrest tickets do not qualify as a Shepard document. In Tennessee, an affidavit of complaint is "a statement alleging that a person has committed an offense." Tenn. R. Crim. P. 3 (West 2018). It must be in writing, made under oath before a magistrate, and allege the essential facts constituting the offense charged. Id. "If the magistrate is satisfied from the written examination that there is probable cause to believe the offense complained of has been committed and that there is probable cause to believe the defendant has committed it, then the magistrate shall issue an arrest warrant." Tenn. Code Ann. § 40-6-205(a); see also Tenn. R. Crim. P. 4(a). The prosecution officially commences when the magistrate issues the arrest warrant. Tenn. Code Ann. § 40-2-104.

Tennessee case law holds that the affidavit of complaint alone is not a "charging instrument." See State v. Shell, 512 S.W.3d 267, 272 (Tenn. Crim. App. 2016); see also State v. McCloud, 310 S.W.3d 851, 860 (Tenn. Crim. App. 2009). As these cases explain, § 40-2-104 provides an exclusive and exhaustive list of ways that a prosecution can commence. State v. Burdick, 395 S.W.3d 120, 124 (Tenn. 2012); State v. Tait, 114 S.W.3d 518, 522 (Tenn. 2003). The specified methods are "all deemed to provide the defendant with sufficient notice of the crime." State v. Ferrante, 269 S.W.3d 908, 914 (Tenn. 2008) (quoting Tait, 114 S.W.3d at 522). Filing an affidavit of complaint is not one of them. An affidavit of complaint does not therefore constitute a charging document.

This Court has held that resort to the use of affidavits of complaint consistent with Shepard is proper in only one certain instance. Review of an affidavit of complaint was held proper in the context of an ACCA analysis regarding whether criminal convictions occurred on separate

18

occasions. See United States v. Jones, 453 F.3d 777, 780 (6th Cir. 2006). In United States v. Wells, 473 F.3d 640 (6th Cir. 2007), this Court noted that Jones's holding "involved only the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes, an inquiry especially suited to resolution by reference to a criminal complaint." Id. at 647 n.5. A subsequent case explicitly stated that "Jones did not address -- it had no occasion to address -- whether a sentencing court may rely on an affidavit of complaint to determine what kind of conduct a defendant necessarily admitted in pleading guilty." United States v. Medina-Almaguer, 559 F.3d 420, 424 (6th Cir. 2009). An affidavit of complaint is not an appropriate Shepard document on its own.

The court also may not rely on the facts stated in the PSR to make the ACCA determination. United States v. Wynn, 579 F.3d 567, 575-76 (6th Cir. 2009) (reliance on the PSR's factual description of a prior conviction is not proper under Shepard and Taylor); see also United States v. Bartee, 259 F.3d 357, 359-60 (6th Cir. 2008) (police reports and criminal complaints are not proper Shepard documents). The only document showing the type of burglaries Mr. Howard committed is the PSR summarizing nebulous non-Shepard approved documents. Because these documents are insufficient for use in establishing under which variant of Tennessee's burglary statute Mr. Howard was convicted for aggravated burglary, Mr. Howard respectfully requests that the ACCA not be applied by this Court.

In closing, Undersigned is hopeful that the government will agree to allow the defendant to appeal the above two issues to the Sixth Circuit. In the alternative, the defendant may seek to withdraw his appeal, as he was advised that Stitt would be dispositive on the issue of whether Tennessee's aggravated burglary qualified as a predicate for the ACCA. Finally, the defendant may seek from this Court to hold the matter in abeyance.

        Respectfully submitted,

        DORIS RANDLE-HOLT
        FEDERAL DEFENDER

        s/ Needum L. Germany
        Assistant Federal Defender
        200 Jefferson Avenue, Suite 200
        Memphis, TN 38103
        (901) 544-3895

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Position of Defendant With Respect To Sentencing Factors has been forwarded by electronic means via the Court's electronic filing system to Mr. Neal Oldham, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103.

This 24th day of January, 2019.

        s/ Needum L. Germany
        Assistant Federal Defender